Cypress maintains that Hynix breached Paragraphs 4.2 and 7 of the CPA by failing to establish and maintain sufficient buffer inventory at the time of the fire. Dkt. # 154 at 19. In response, Hynix argues that Microsoft waived the buffer inventory provisions through its course of conduct and further contends the buffer inventory obligations did not apply in times of capacity constraint. Dkt. # 156 at 24. The Court disagrees with Hynix.
On the issue of waiver, the CPA states that no waiver will be effective unless in writing and signed by the waiving party. Dkt. # 155-1 at 29; Dkt. # 160-4 at 7. Hynix presents no evidence of a signed waiver to the Court, nor does it affirmatively show that any buffer inventory was affirmatively established. Instead, the record demonstrates that Microsoft and Hynix had conversations regarding the required buffer, which generally meant two weeks of inventory. Dkt. # 155-1 at 20, 56. This is also memorialized in the Ninth Amendment. Dkt. # 155-1 at 37. A Hynix representative testified, however, that it did not actually have facilities to store additional semiconductor inventory and sent produced inventory to customers right away. Id. at 90.
Furthermore, nothing in the CPA contemplates the buffer inventory provision becoming ineffective in the event of a capacity constraint. In fact, Paragraph 7 required Hynix to establish buffer inventory prior to the first anticipated delivery. Id. at 26. Hynix presents no material evidence in support of its interpretation that a "capacity constraint" relieved Hynix of establishing the buffer inventory in the first instance. By contrast, Paragraph 7 states only that, "[i]f Buffer Inventory becomes depleted, Supplier will reestablish the required Buffer Inventory as promptly as possible according to the Lead Time." Id.
*1154 Accordingly, the Court finds that Cypress is entitled to summary judgment on breach of Paragraphs 4.2 and 7 based on Hynix's failure to establish and maintain sufficient buffer inventory.
(4) Whether Hynix breached the CPA by failing to establish a Discovery Recovery Plan
Paragraph 12.1 concerns the creation of a written disaster recovery plan. It states: "Throughout the Term, Supplier will maintain a written disaster recovery plan (the "Disaster Recovery Plan") in order to ensure the supply of Products to Microsoft and Subcontractors in the event of a force majeure or other similar disruption. Supplier will submit a written Disaster Recovery Plan proposal to Microsoft for Microsoft's review and written approval within one hundred twenty (120) days after the Effective Date. Any material changes to the Microsoft approved Disaster Recovery Plan will be subject to Microsoft's prior review and written approval (not to be reasonably withheld). Supplier will promptly implement the Microsoft approved Disaster Recovery Plan upon any force majeure or similar circumstances." Dkt. # 155-1 at 27; Dkt. # 160-4 at 5.
As with the buffer inventory, Cypress claims Hynix breached the CPA by failing to maintain a written "Disaster Recovery Plan" in the event of a force majeure. In support, Cypress offers testimony from a Hynix representative who affirmatively stated that Hynix did not have a disaster recovery plan for Microsoft prior to the fire. Dkt. # 155-1 at 94-95. Hynix opposes, claiming Microsoft waived its right to enforce the Disaster Recovery Plan provision and, in any case, no breach occurred because Microsoft and Hynix collaborated on a recovery plan following the fire. Dkt. # 156 at 20.
As before, the Court finds that Hynix's waiver argument to be unsupported since no evidence of a written waiver is before the Court. Additionally, evidence of Hynix collaborating with Microsoft after the fire may be relevant to causation and damages, but the Court finds it has no bearing on breach. Dkt. # 160-25; Dkt. # 160-26. Cypress is entitled to summary judgment on this issue.
(5) Whether Hynix breached the CPA by failing to adhere to the pricing and capacity obligations in the Ninth Amendment
In the last of its claims, Cypress argues that Hynix breached the Ninth Amendment by supplying Cypress with more than 5 million DRAM chips above the price of [Redacted], as specified in the Pricing Table, and by failing to supply the 60 million chips listed in the Capacity Table. Dkt. # 154 at 20-21.
As previously addressed by the Court, Cypress' position that Hynix breached the CPA by simply failing to supply 60 million DRAM chips would render the Ninth Amendment's "commercial reasonable efforts" language superfluous. The Ninth Amendment also makes clear that "[t]he pricing in the Pricing Table ... below will apply unless the parties agree to other pricing, in writing, in which case the price will be as reflected in the applicable Purchase Order." Dkt. # 155-1 at 38. Here, Hynix presents the Court with evidence that Microsoft agreed to pay a higher price for additional DRAM chips after the fire and issued purchase orders reflecting the new negotiated price. Dkt. # 160-27; Dkt. # 160-28; Dkt. # 160-29; Dkt. # 160-30. Accordingly, on the evidence presented, Cypress is not entitled to judgment as a matter of law on these two issues of breach.
iii. Affirmative Defenses
Even if it breached the CPA, Hynix argues summary judgment is appropriate *1155 because any non-performance was rendered commercially impractical after the Wuxi fire. Dkt. # 162 at 21-22.
Section 62A.2-615 of the Washington Revised Code is meant to be asserted as a defense by a seller who is unable to deliver due to unforeseen circumstances and therefore has been sued by the buyer for breach of contract. See Am. Oil Co. v. Columbia Oil Co., Inc. , 88 Wash.2d 835, 567 P.2d 637, 640 (1977). However, as Cypress evidences, the existence of a provision calling for a "Disaster Recovery Plan" for use in the event of force majeure and the fact that Hynix allocated additional DRAM chips to other customers precludes finding as a matter of law that Hynix's non-performance is entirely excusable based on commercial impracticability. Dkt. # 155-1 at 27, 78.
iv. Damages
The Ninth Amendment modifies the CPA and clarifies the liabilities of each party in the event of breach. In all capital letters, the clause reads: "To the maximum extent permitted by law, neither party will ever be liable for any indirect, incidental, consequential, punitive, special or exemplary damages that arise out of or relate to this Agreement." Dkt. # 155-1 at 35. Hynix seeks partial summary judgment on the applicability of the limitation of liability provision and argues it limits Microsoft, and thus Cypress, to direct damages only. Dkt. # 162 at 23-25.
Under Washington law, parties may limit their liability for breach of contract and the interpretation of such clauses is a matter of law. See, e.g. , Am. Nursery Prods., Inc. v. Indian Wells Orchards , 115 Wash.2d 217, 797 P.2d 477, 481 (1990). The applicability of a contractual limitation of liability is suitable for resolution on summary judgment. M.A. Mortenson Co., Inc. v. Timberline Software Corp. , 140 Wash.2d 568, 998 P.2d 305, 314 (2000).
Under Section 62A.2-713 of the Washington Revised Code, when a seller fails to make delivery, the measure of damages for non-delivery is the difference between the market price of the time of breach and the contract price together with any incidental or consequential damages. RCWA § 62A.2-713. The Washington Revised Code includes in its definition of "incidental damages" any commercially reasonable charges, expenses or commissions in connection with effecting cover. RCWA § 62A.2-715 ; see also 67A Am. Jur. 2d Sales § 1160. As for consequential damages, the statute defines it to include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." RCWA § 62A.2-715. Here, the limitation of liability provision is unambiguous and disclaims liability for any incidental, consequential, punitive, special or exemplary damages that arise out of or relate to this Agreement. Id. Because Cypress' claims for breach of contract plainly arise out of or relate to the CPA, it is subject to limitation of liability provision.
Cypress makes two arguments in response-that it is still entitled to freight charges and miscellaneous costs as "direct damages" and that the Court should find limitation of liability clause unconscionable. Cypress suggests freight charges and miscellaneous costs are "direct damages" because they "flow naturally from the breach of a contract." Dkt. # 168 at 22 (citing Valve Corp. v. Sierra Ent. Inc. , 431 F.Supp.2d 1091 (W.D. Wash. 2004) ). However, the Court finds Cypress' cited case for this proposition distinguishable. Valve Corp. involved breach of a licensing agreement, not breach of a contract for the sale of goods. Id. at 1101. Cypress also fails to provide evidence that the parties intended *1156 "direct damages" to include freight charges and miscellaneous costs as opposed to the measure of damages under Section 62A.2-713.
Cypress' argument on unconscionability is similarly unpersuasive. In a purely commercial transaction, as is the case here, the fact that an unfortunate result occurs after the contracting process does not render an otherwise standard limitation of remedies clause substantively unconscionable. See M.A. Mortenson Co., Inc. , 998 P.2d at 315. Nor was the limitation of liability clause procedurally unconscionable. Id. (describing procedural unconscionability as the "lack of meaningful choice," considering the circumstances surrounding the transaction, and whether the important items were hidden) (internal citations omitted). The limitation of liability clause was set forth in capital letters in the Ninth Amendment and negotiated between the parties. Dkt. # 155-1 at 35; Dkt. # 160-22. Microsoft is not an inexperienced seller and had entered into purchase agreements for almost ten years prior to the dispute. Cypress stands in the shoes of the Microsoft here and is subject to the limitation of liability clause. Hynix is entitled to summary judgment on this issue. Accordingly, Cypress may not recover any indirect, incidental, consequential, punitive, special or exemplary damages.
V. CONCLUSION
For the reasons stated above, the Court GRANTS IN PART Cypress' Motion for Partial Summary Judgment (Dkt. # 154) on the issues relating to breach of the CPA's buffer and disaster plan provisions and otherwise DENIES Cypress' Motion. The Court also GRANTS IN PART Hynix's Motion for Summary Judgment (Dkt. # 162) on the applicability of the CPA's limitation of liability provision (as modified by the Ninth Amendment) and otherwise DENIES Hynix's Motion.